# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

Kayla E.,[1]

                                   Plaintiff,

            v.                                          8:25-CV-749
                                                           (MJK)

Frank Bisignano,
Commissioner of Social Security

                                   Defendant.

---

Mark Schneider Esq., for Plaintiff
Hugh Dun Rappaport Esq., Special Asst. U.S. Attorney, for Defendant

Mitchell J. Katz, U.S. Magistrate Judge

## MEMORANDUM DECISION & ORDER

Kayla E. brought this action under the Social Security Act (42 U.S.C. § 405(g)) seeking judicial review of the Social Security Commissioner's final decision denying her application for benefits. (Dkt. 1.). Kayla E. consented to the jurisdiction of a Magistrate Judge. (Dkt. 7). Both parties filed briefs (Dkts. 10, 16, 17) which the Court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

---

[1] This decision will identify the plaintiff using only her first name and last initial to protect her privacy.

1

## I.    PROCEDURAL HISTORY

On August 15, 2023, Kayla E. filed an application for Title II and XVI disability insurance and supplemental social security income benefits, alleging disability beginning June 30, 2020. (T. 10).[2] The Social Security Administration denied the claim initially on November 6, 2023, and again upon reconsideration on December 7, 2023. (*Id.*). Kayla E. requested a hearing 7 days later. (*Id.*) On September 9, 2024, Administrative Law Judge ("ALJ") Asad Ba-Yunus held a hearing. (T. 102-122). At the hearing, Kayla Hebert represented Kayla E. (T. 38). There, ALJ Ba-Yunus confirmed that Kayla E. wished to withdraw her Title II claim and amend her alleged onset date to June 22, 2023. (T. 10); *see also* (T. 106-107). Both Kayla E. and the Vocational Expert, Cherie Plante, testified. (T. 108-117; 117-122). On September 27, 2024, ALJ Ba-Yunus issued an unfavorable decision. (T. 10-19). The appeals council later denied Kayle E.'s appeal. (T. 1-3).

---

[2] All page references to the Administrative Transcript ("T.") and not the page numbers assigned by the CM/ECF pagination system.

## II.    GENERALLY APPLICABLE LAW

### A. Disability Standards

To be considered disabled, plaintiffs seeking disability insurance or supplemental security income benefits must establish that they are "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months …" 42 U.S.C. § 1382c(a)(3)(A). In addition, plaintiffs'

> physical or mental impairment or impairments [must be] of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [they] live[], or whether a specific job vacancy exists for [them], or whether [they] would be hired if [they] applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and supplemental security income disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [they are] not, the [Commissioner] next considers whether the claimant

has a "severe impairment" which significantly limits [their] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider [them] disabled without considering vocational factors such as age, education, and work experience … Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [they have] the residual functional capacity to perform [their] past work. Finally, if the claimant is unable to perform [their] past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 20 C.F.R. §§ 404.1520, 416.920. Plaintiffs have the burden of establishing disability at the first four steps. *See Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013). If they establish that their impairment prevents them from performing their past work, the burden then shifts to the Commissioner to prove the final step. *Id.*

**B. Scope of Review**

When reviewing a final decision of the Commissioner, courts must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Id.* at 417; *see also Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42

4

U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id.* Yet this standard is a very deferential standard of review "— even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, reviewing courts consider the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). But reviewing courts may not substitute their interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

ALJs need not explicitly analyze every piece of conflicting evidence in the record. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *see also Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every

conflicting shred of medical testimony[.]"). But ALJs cannot "'pick and choose' evidence in the record that supports [their] conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

The record includes Kayla E.'s medical and mental health treatment records which the parties are familiar with. The Court will refer to the pertinent records and the hearing testimony in its analysis of the parties' claims as appropriate.

## IV.   THE ALJ'S DECISION

At Step One of the five-step-sequential analysis, ALJ Ba-Yunus determined that Kayla E. has "not engaged in substantial gainful activity since June 22, 2023, the alleged onset date." (T. 13) (cleaned up).

At Step Two, ALJ Ba-Yunus concluded that Kayla E. "has the following severe impairments: anxiety disorder, posttraumatic stress disorder [(PTSD)], depressive disorder, and attention deficit hyperactivity disorder [(ADHD)]." (T. 13) (cleaned up). At the same step,

ALJ Ba-Yunus concluded that Kayla E.'s "learning disability is a non-severe impairment."(T. 13).

At Step Three, ALJ Ba-Yunus determined that Kayla E. "does not have an impairment, or combination of impairments, that medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix. 1." (T. 13) (internal citations omitted).

Next, ALJ Ba-Yunus discussed the "paragraph B" criteria. (T. 13-14). "To satisfy the paragraph B criteria," mental impairments "must result in one extreme limitation or two marked limitations in a broad area of functioning." *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b) (cleaned up). The four broad areas of mental functioning are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting and managing oneself. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). Here, ALJ Ba-Yunus found that Kayla E. did not meet the "paragraph B" criteria because he determined that Kayla E. had moderate limitations in all four areas. (T. 13-14).

ALJ Ba-Yunus also considered the "paragraph C" criteria. (T. 14). The "paragraph C" criteria require a documented medical history of the

existence of the disorder over a period of at least two years, with evidence of both (a) medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of the mental disorder; and (b) marginal adjustment, that is, minimal capacity to adapt to changes in environment or to demands that are not already part of daily life. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(c). Here, ALJ Ba-Yunus noted that the "paragraph C" criteria were not met. (T. 14).

After this, ALJ Ba-Yunus determined that Kayla E. had the residual function capacity ("RFC") to perform:

> a full range of work at all exertional levels but with the following nonexertional limitations: she may only perform simple tasks, may have occasional interaction with supervisors, coworkers, and the general public, and can tolerate occasional changes to a routine work setting.

(T. 15).

To make this finding, ALJ Ba-Yunus considered "the medical opinion(s) and prior administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*).

At Step Four, ALJ Ba-Yunus reasoned that Kayla E. has "no past relevant work," was within the "younger individual age 18-49" category,

has "limited education," and "transferability of skills is not an issue." (T. 18).

Finally, at Step Five, ALJ Ba-Yunus concluded that "considering" Kayla E.'s "age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that" she "can perform." (T. 18). Accordingly, ALJ Ba-Yunus determined that Kayla E. is not disabled as defined by the Social Security Act. (T. 19).

## V.    ISSUES IN CONTENTION

On appeal, Kayla E. argues that ALJ Ba-Yunus erred: (1) when evaluating Brett Hartman Psy.D.'s and Licensed Medical Social Worker ("LMSW") Nashua Malko's medical opinions; (2) when analyzing her subjective statements; and (3) when finding her borderline intelligence a non-severe impairment at Step Two. (Pl Br. at pgs. 11-25). The Commissioner challenges every argument. (Def. Br. at pgs. 2-12).

## VI.    DISCUSSION

**Substantial evidence does not support ALJ Ba-Yunus's decision because he improperly analyzed Dr. Hartman's and LMSW Malko's medical opinions.**

The Court finds that substantial evidence does not support ALJ Ba-Yunus's RFC. When reviewing an agency's decision, the reviewing

court must determine if substantial evidence supports the ALJ's decision. Here, ALJ Ba-Yunus's decision is riddled with errors and conclusory analysis. In consequence, the Court reverses and remands the ALJ's decision.

RFC is "what [the] individual can still do despite [their] limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular continuing basis … A 'regular and continuing basis' means eight hours a day, five days a week, or an equivalent work schedule." *Balles v. Astrue*, No. 11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (quoting *Melville v. Apfel*, 198 F. 3d 45, 52 (2d Cir. 1999)) (quoting SSR 96-8p, 1996 WL 374184, at *2).

In their RFC determinations, ALJs must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) ("the ALJ must consider the claimant's RFC, age, education, past work experience, and transferability of skills to determine if the claimant can

perform other work existing in the national economy."); *Genier v. Astrue*, 606 F. 3d 46, 49 (2d Cir. 2010) ("When determining a claimant's RFC, the ALJ is required to take the claimant's reports of pain and other limitations into account, but is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record.") (internal citations omitted).

ALJs must specify the functions a plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *see also Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *See Natashia R. v. Berryhill*, No. 17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7); *see also Angelo Michael G. v Kijakazi*, No. 22-CV-00892 (TWD), 2023 WL 4763792 (N.D.N.Y. July 26, 2023) (quoting *Ferraris*, 728 F. 2d at 587). "[A]n RFC finding is administrative in

11

nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527(d)(2)).

Dr. Hartman, a consultative examiner, opined limitations stricter than ALJ Ba-Yunus. In his report, Dr. Hartman noted that Kayla E., among other things, has "mild difficulty using reasoning and judgment, mild difficulty sustaining an ordinary routine, moderate difficulty sustaining concentration, moderate to marked difficulty understanding remembering and applying complex directions, moderate to marked difficulty interacting adequately with others, [and] marked difficulty regulating her emotions." (T. 436) (cleaned up). When making this finding, Dr. Hartman noted that Kayla E. appeared dysphoric, nervous, and that both her attention and concentration, and her recent and remote memory were mildly impaired. (T. 435). Dr. Hartman also noted that Kayla E. reported panic attacks and panic attack symptoms like heart palpitations, breathing difficulties, trembling, chest pressure, feeling overwhelmed when there is a conflict, and fear of dying. (T. 434). Kayla E. stated that she avoids social settings. (T. 434).

But ALJ Ba-Yunus rejected all of Dr. Hartman's stricter limitations. Rejecting Dr. Hartman's moderate to marked limitations in interacting with others and regulating emotions, ALJ Ba-Yunus decided that Dr. Hartman's stricter limitations were "inconsistent with the record which shows that the [Kayla E.] was cooperative during the consultative examination and during the multiple examinations at Behavioral Health Services North." (T. 17). ALJ Ba-Yunus also rejected Dr. Hartman's moderate to marked limitations in understanding, remembering, and applying complex directions because "the record . . . shows grossly intact recent and remote memory, grossly intact attention, and a normal fund of knowledge." (T. 17).

Substantial evidence does not support ALJ Ba-Yunus's rejection of Dr. Hartman's moderate to marked limitation interacting with others and regulating emotions. To start, "[t]he fact that [Kayla E.] was described as pleasant and cooperative . . . does not negate the severity of her mental impairments, as individuals with mental illnesses often adopt a highly restricted and/or inflexible lifestyle within which they appear to function well." *Callahan v. Berryhill*, No. 17-CV-06245, 2018 WL 1616058, at *5 (W.D.N.Y. Apr. 4, 2018). Indeed, "[a] claimant's

13

ability to perform adequately when she is in structured, supportive settings—such as medical or psychiatric appointments, which have lowered psychological pressures and interpersonal demands—does not necessarily predict performance and ability to cope in the competitive work environment." *Id.* This makes sense. "The reaction to the demands of work (stress) is highly individualized, and mental illness is characterized by adverse responses to seemingly trivial circumstances." Titles II & XVI: Capability to Do Other Work-Themedical-Vocational Rules As A Framework for Evaluating Solely Nonexertional Impairments, SSR 85-15 (S.S.A. 1985). But ALJ Ba-Yunus seems to ignore the complexities of mental illness when rejecting Dr. Hartman's moderate to marked limitation. ALJ Ba-Yunus, in essence, interpreted raw data to support *his* finding that Kayla E. can occasionally interact with supervisors, coworkers, and the public. This was error. *See, e.g., Heaman v. Comm'r of Soc. Sec.,* No. 3:16-CV-1459 (TWD), 2018 WL 11468023, at *9 (N.D.N.Y. Mar. 20, 2018) (noting that ALJs err when they interpret raw medical data); *see also Rucker v. Kijakazi,* 48 F.4th 86, 92 (2d Cir. 2022) ("[a] medical diagnosis will often be informed by the patient's subjective description of his or her symptoms . . . That is

14

all the more true in cases involving mental health, which tend to be less susceptible to objective testing and assessment.").

LMSW Malko, Kayla E.'s treating psychotherapist, also opined limitations stricter than ALJ Ba-Yunus. LMSW Malko, who began treating Kayla E. in September 2023, treats Kayla E. bimonthly for 45 minutes. (T. 366, 502). With this lengthy treating relationship, LMSW Malko opined that Kayla E. has, among others, moderate limitations in interacting with others, moderate limitations in concentration, moderate limitations in persisting, marked limitations in maintaining pace, marked limitations in adapting in the workplace, and marked limitations in managing oneself in the workplace. (T.504) LMSW Malko also opined that Kayla E. would be off task for 25% of the time or longer. (T. 505).

ALJ Ba-Yunus rejected LMSW Malko's marked limitations. To make this finding, ALJ Ba-Yunus reasoned that the marked limitations were "[n]ot consistent with the examination notes of record, which indicate [Kayla E.'s] limitations" would not "be marked in nature." It is also inconsistent with [Kayla E.'s] own reports to Dr. Hartman that she goes shopping with assistance, occasionally drives, and spends her days

looking after her children, doing chores, cooking, taking care of her pets, and going online." (T. 18).

Examining that reasoning and the record as whole, the Court finds that substantial evidence does not support ALJ Ba-Yunus's rejection of LMSW Malko's marked limitations. ALJ Ba-Yunus's first statement—that LMSW Malko's findings are inconsistent with the record because the records indicate less limitations—is conclusory, which is error. *See, e.g., Ron I. v. Comm'r of Soc. Sec.,* No. 23-CV-489, 2024 WL 4678398, at *12 (D. Vt. Nov. 5, 2024) (remanding the ALJ's decision where the ALJ consistently noted that a doctor's opinion is inconsistent with the record overall but the ALJ failed to support that conclusion). "Simply stating that an opinion is not consistent with the overall record, without citing examples of inconsistencies or discussing the inconsistencies in the record, is an insufficient rationale …" *Erica B. v. Comm'r of Soc. Sec.*, No. 21-CV-06202, 2023 WL 5154640, at *3 (W.D.N.Y. July 27, 2023). Likewise, ALJ Ba-Yunus's second argument does not pass muster because his entire rejection of LMSW Malko's opinion relies on activities of daily living. True, ALJs must consider a claimant's activities of daily living. *See, e.g., Michelle B. v. Comm'r of*

*Soc. Sec.*, No. 20-CV-332, 2021 WL 3022036, at *6 (N.D.N.Y. July 16, 2021) ("[t]he Regulations explicitly direct the ALJ to consider a claimant's activities of daily living when assessing the ultimate question of disability.") But "[i]t is legal error to give excessive weight to a claimant's ability to perform basic daily activities when assessing [their] ability to engage in substantial gainful activity." *Moss v. Colvin*, No. 13-CV-731, 2014 WL 4631884, at *33 (S.D.N.Y. Sept. 16, 2014). Indeed, "[t]here are critical differences between activities of daily living (which one can do at [their] own pace when [they are] able) and keeping a full-time job." *Id.* A person's, here Kayla E.'s, ability to take care of themselves, "does not, in itself, contradict a claim of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Brown v. Comm'r of Soc. Sec.*, No. 06-CV-3174, 2011 WL 1004696, at *5 (E.D.N.Y. Mar. 18, 2011); *see also Balsamo v. Chater,* 142 F.3d 75, 81 (2d Cir.1998) (finding "that a claimant need not be an invalid to be found disabled under the Social Security Act.").

A review of the record shows that Kayla E. suffers from serious mental health issues. During her consultative examination, Kayla E. presented as dysphoric and nervous. (T. 435). Kayla E. reported that

17

she received mental health treatment on and off since she was a child. (T. 433). Kayla E. "was diagnosed with PTSD, ADHD, and [generalized anxiety disorder] when she was seven years old." (T. 58). Her mental health issues often lead to "sadness, low energy, crying spells, social isolation, feeling overwhelmed, irritability, loss of interest, and low self-esteem." (T. 434). This report mirrors Kayla E.'s reports to LMSW Malko. In their sessions, LMSW Malko notes that Kayla E. "struggle[s] with anxiety" and "she has panic attacks every day and rarely leaves her house." (T. 457). In a February 2024 meeting with LMSW Malko, Kayla E. presented as anxious, depressed, and tearful. (T. 459). Kayla E. repeatedly presented as anxious and depressed. (T. 440, 447, 454, 465, 470, 475, 830). Crying is also common for Kayla E. *See, e.g.,* (T. 801) ("Kayla [E.] shared that she recently 'broke down' and cried while on a walk with her kids."). In fact, Kayla E. told LMSW Malko that: "I try to act like I'm ok. But it's eating me up inside." (T. 801). Objective evidence supports Kayla E.'s statement because she scored a 17 on the PHQ-9 and an 18 on the GAD7. *See Clarke v. Comm'r of Soc. Sec.,* No. 19-CV-7213, 2021 WL 2481909, at *5 (S.D.N.Y. June 16, 2021) (noting that the PHQ-9 measures depression, GAD7 measures anxiety, and a

18

score of 17 on the GAD7 means the claimant suffers from severe anxiety); *see also Rodriguez v. Comm'r of Soc. Sec.*, No. 22 CV. 10665, 2024 WL 1342834, at *2 n. 4(S.D.N.Y. Mar. 29, 2024) (noting that PHQ-9 ranks severity in the following way: "[a] rating of 1 to 5 equates with minimal depression, 5 to 9 with mild depression, 10 to 14 with moderate depression, 15 to 19 with moderately severe depression and 20 to 27 with severe depression."); *Rivera v. Comm'r of the Soc. Sec. Admin.*, No. 19-CV-4630, 2020 WL 8167136, at *4 n. 6 (S.D.N.Y. Dec. 30, 2020) (cleaned up) (noting that PHQ-9 test is reliable). In sum, the record shows that Kayla E. suffers from serious mental health issues.

ALJ Ba-Yunus's decision to dismiss the evidence is curious. ALJ Ba-Yunus relied on the fact of Kayla E.'s activities of daily living, child rearing, normal mental health exams, and conclusory statements to reject Kayla E.'s claim. *See* (T. 15-18). What the Court can glean from this is that ALJ Ba-Yunus discredited Kayla E.'s statements to the medical sources. "But well-established case law cautions against reflexively rejecting subjective reports in mental health cases because mental health diagnoses necessarily rely on self-reported statements." *Nunez v. Comm'r of Soc. Sec.*, 164 F.4th 60, 75 (2d Cir. 2025). "The

19

ALJ's approach on this issue," rejecting all subjective statements, "was erroneous." *Id.* Simply put, ALJ Ba-Yunus's decision falls far short of being supported by substantial evidence.

\* \* \*

All in all, substantial evidence does not support ALJ Ba-Yunus's decision. ALJ Ba-Yunus's decision is riddled with errors and conclusory analysis. Those errors demonstrate that substantial evidence does not support the decision. In consequence, the Court reverses and remands ALJ Ba-Yunus's decision.

\* \* \*

The Court does not decide the remaining issues because it is remanding the ALJ's decision on the substantial evidence and subjective complaints issues. *See, e.g., Tyler W. v. Comm'r of Soc. Sec.,* No. 3:22-CV-01345 (CFH), 2024 WL 1075209, at \*14 (N.D.N.Y. Mar. 12, 2024) ("[a]s remand is required, the Court need not reach plaintiff's remaining arguments").

## VII. CONCLUSION

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that Kayla E.'s motion for judgment on the pleadings (Dkt. 10) be **GRANTED**; and it is further

**ORDERED**, that the Commissioner's motion for judgment on the pleadings (Dkt. 16) be **DENIED**; and it is further

**ORDERED**, that the decision of the Commissioner be **REVERSED** and **REMANDED**.

Dated: May 18, 2026

Digitally signed by
Mitchell J Katz
Date: 2026.05.18
11:08:55 -04'00'

Hon. Mitchell J. Katz
U.S. Magistrate Judge

21